[Cite as *State v. Octavio*, 2016-Ohio-7378.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Sheila G. Farmer, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2016CA00092 |
| TYLER OCTAVIO | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal appeal from the Canton Municipal
                            Court, Case No. 2016CRB00640

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     October 17, 2016

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

TASHA FORCHIONE                         CRISTIN ROUSH
Assistant Prosecutor                    Stark County Public Defender
City Hall – 7th Floor                   201 Cleveland Avenue S.W., Ste. 104
Canton, OH 44701                        Canton, OH  44702

*Gwin, J.,*

{¶1} Appellant Tyler Octavio ["Octavio"] appeals his conviction and sentence for receiving stolen property after a jury trial in Canton Municipal Court.

*Facts and Procedural History*

{¶2} Jared Smith lives with his grandmother in Uniontown, Ohio. His bedroom and living space is in the basement of the home. On January 30, 2016, Jared was visiting a friend in Akron. When he returned home the next day, he and his grandmother learned that his laptop was missing.

{¶3} Jared learned that his cousin, Alec, and Octavio were staying in his room the previous night. Jared assumed that Alec and Octavio took the laptop. Neither Alec nor Octavio had permission to take the laptop. Alec told Jared that he and Octavio were both at fault for taking the laptop.

{¶4} Jared's grandmother, Donna Larson, stated that Alec and Octavio came over to her home between 11:00 and 11:30 p.m. They were playing video games in Jared's room. Around 3:00 a.m., Alec and Octavio left the home headed toward Canton. The two returned to Ms. Larson's home around 4:30 a.m. Donna heard them talking about a password. Specifically, she heard Octavio ask Alec for a password. The next day, Monday, Donna was cleaning and noticed that Jared's laptop was missing. Donna was suspicious that Alec and Octavio took the laptop because they were the only other people in the home that weekend.

{¶5} The co-defendant, Alec Zugeic, testified about the incident. Alec stated that he and Octavio were using cocaine at his grandmother's house together on January 30, 2016. At some point, the two wanted to get more drugs and they discussed exchanging

a laptop for drugs. Alec told Octavio to text the dealer and ask if they could exchange the laptop for drugs. Octavio asked if anyone would notice the laptop was missing, and Alec said, "No, nobody uses it." He insisted it was a family laptop. Alec never told Octavio that the family gave him permission to take the laptop. Alec never told Octavio that the laptop belonged to him. Octavio then drove himself and Alec to Canton, and Octavio took the laptop into the dealer's house and exchanged it for cocaine. Later that morning, the dealer contacted Alec and Octavio because he wanted the password for the laptop.

{¶6} Sergeant Nathan Weidman, of the Uniontown Police Department, investigated this incident. He learned through speaking with Alec and Octavio that they took the computer and exchanged it for drugs in Canton. On February 2, 2016, Octavio went to the police station for an interview with Sergeant Weidman. During that interview, Octavio denied involvement in the crime. The sergeant also interviewed Alec and he admitted that he and Octavio exchanged the laptop for drugs.

{¶7} Sergeant Weidman asked Octavio to come in for a second interview on February 3, 2016. During the second interview, Octavio stated, "I knew, but I didn't ask," referring to whether the computer was stolen. Octavio also stated, "I did find out the computer was stolen when we got down there." Octavio further said, "I had a good idea it was stolen because of everything seemed fishy on the way down." A body camera video, Exhibit 1, was presented to the jury, which documented Sergeant Weidman's interview with Octavio. In the video, Octavio states, (1) I did find out the computer was stolen when we got down there; (2) I had a good idea it was stolen because everything seemed fishy; (3) I knew it was stolen when I got there; (4) I had thoughts it was stolen;

(5) Everything didn't add up; (6) I had a good idea it was stolen; and (7) I knew, but I didn't ask.

{¶8} The jury found Octavio guilty of receiving stolen property. The trial court sentenced Octavio to serve one hundred eighty days in the Stark County Jail with all but twenty days suspended on condition of Octavio's good behavior for two years. Octavio was also sentenced to pay court costs and restitution if necessary to Jared Smith. Furthermore, Octavio was referred to TASC for an evaluation and was ordered to direct probation for two years.

*Assignment of Error*

{¶9} Octavio raises one assignment of error,

{¶10} "I. THE TRIAL COURT ERRED IN ADOPTING THE GUILTY FINDINGS THE FINDING WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

*Analysis*

{¶11} In his sole assignment of error, Octavio argues that his conviction is against the manifest weight of the evidence produced by the state at trial and further, Octavio challenges the sufficiency of the evidence.

{¶12} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming

this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶13} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶14} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly,

reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶15}** To find Octavio guilty of receiving stolen property, the trier of fact would have to find that Octavio received, retained, or disposed of the property of another, knowing or having reasonable cause to believe the property had been obtained through the commission of a theft offense. R.C. 2913.51(A). A theft offense includes "theft," which involves knowingly obtaining control over the property of another without that person's consent. R.C. 2913.02(A)(1).

**{¶16}** The criteria for determining whether a defendant knew or should have known that property has been stolen were set forth in *State v. Davis*, 49 Ohio App.3d 109, 550 N.E.2d 966 (8th Dist. 1988). The factors include: 1) the defendant's unexplained possession of the merchandise; 2) the nature of the merchandise; 3) the frequency with

which such merchandise is stolen; 4) the nature of the defendant's commercial activities; and 5) the relatively limited time between the theft and the recovery of the merchandise. Id. at 112, 550 N.E.2d 966. *Accord, State v. Konstantinov*, 5th Dist. Delaware No. 09-CAA-090077, 2009-Ohio-6964, ¶28-¶29.

**{¶17}** Knowledge that property is stolen may be inferred from circumstantial evidence, such as a defendant's unexplained possession of stolen property. *State v. Hankerson*, 70 Ohio St.2d 87, 92, 434 N.E.2d 1362 (1982).

**{¶18}** Ohio Revised Code Section 2901.22(B) sets forth the definition of how and when a person acts knowingly,

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶19}** Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Johnson,* 56 Ohio St.3d 35, 38,381 N.E.2d 637(1978) *citing State v. Huffman,* 131 Ohio St. 27, 1 N.E.2d 313(1936)*: State v. Rojas,* 64 Ohio St.3d 131, 139, 592 N.E.2d 1376(1992); *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695(1st Dist. 2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant

acted knowingly is a subjective one, but it is decided on objective criteria." Id. citing *State v. Adams,* 4th Dist. Ross No. 94 CA 2041, 1995 WL 360247(June 8, 1995) and *State v. Paidousis*, 10th Dist. Franklin No. 00AP-118, 2001 WL 436079 (May 1, 2001). See also, *State v. Butler,* 5th Dist. Holmes No. 2012-CA-7, 2012-Ohio-5030, ¶25.

**{¶20}** In the case at bar, the record shows that Octavio knew the laptop did not belong to him or the co-defendant. Further, Octavio was aware that the co-defendant did not reside at the home where the laptop was taken. Additionally, Octavio made several statements to the investigating sergeant that he knew the laptop was stolen. For example, Octavio stated, "I knew, but I didn't ask," referring to whether the computer was stolen. During the video of his second statement to Sergeant Weidman, Octavio states, (1) I did find out the computer was stolen when we got down there; (2) I had a good idea it was stolen because everything seemed fishy; (3) I knew it was stolen when I got there; (4) I had thoughts it was stolen; (5) Everything didn't add up; (6) I had a good idea it was stolen; and (7) I knew, but I didn't ask. Octavio's statements indicate that he was aware there was a high probability that he and the co-defendant did not have permission to remove the laptop. Octavio's failure "to make inquiry" or acts "with a conscious purpose to avoid learning the fact" do not excuse this criminal behavior. See R.C. 2901.22(B).

**{¶21}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Octavio committed the offense of receiving stolen property.

**{¶22}** We hold, therefore, that the state met its burden of production regarding each element of the crime of receiving stolen property and, accordingly, there was sufficient evidence to support Octavio's conviction.

**{¶23}** The record contains no evidence that Octavio abandoned or renounced his purpose in trading the laptop for drugs at any time after he became aware the laptop had been stolen. Octavio took the laptop inside the dealer's home, exchanged the laptop for drugs, returned to Ms. Larson's home and consumed the drugs with his co-defendant. Octavio did not attempt to distance himself from the theft of the laptop when pulled over by the police for and equipment violation on the return to Ms. Larson's home after visiting the drug dealer.

**{¶24}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th

Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

**{¶25}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶26}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶27}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL

29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).*

**{¶28}** In the case at bar, the jury heard the witnesses, viewed the video and heard Octavio's arguments concerning his lack of knowledge.

**{¶29}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Octavio of the charge.

**{¶30}** Based upon the foregoing and the entire record in this matter, we find Octavio's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Octavio and his arguments. This court will

not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Octavio's guilt.

{¶31} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of receiving stolen property beyond a reasonable doubt.

{¶32} Octavio's first assignment of error is overruled.

{¶33} For the foregoing reasons, the judgment of the Canton Municipal Court, Stark County, Ohio is affirmed.

By Gwin, J.,

Farmer, P.J., and

Wise, J., concur